# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

DEANGELO STOKES,

    Petitioner,

v.                     Case No. 10-CV-33

JAMES SCHWOCHERT,

    Respondent.

_____

## ORDER

On January 13, 2010, petitioner Stokes filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. After a jury trial in Milwaukee County Circuit Court, Stokes was convicted of first degree intentional homicide, a violation of Wis. Stat. § 940.01(1)(a). Stokes was sentenced to life imprisonment (eligible for extended supervision as of thirty years from November 5, 2002). Stokes is currently confined to the Dodge Correctional Institution in Waupun, Wisconsin.

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts authorizes a district court to conduct an initial screening of habeas corpus petitions and to dismiss a petition summarily where "it plainly appears from the face of the petition . . . that the petitioner is not entitled to relief." This rule provides the district court the power to dismiss both those petitions that do not state a claim upon which relief may be granted and those petitions that are factually frivolous. *See Small v. Endicott*, 998 F.2d 411, 414 (7th Cir. 1993). Upon an initial Rule 4 review of habeas petitions, the court will analyze whether the petitioner has

avoided statute of limitations bars, exhausted available state remedies, avoided procedural default, and set forth cognizable constitutional or federal law claims.

The court begins its Rule 4 review by examining the timeliness of Stokes's petition. A state prisoner in custody pursuant to a state court judgment has one year from the date "the judgment became final" to seek federal habeas relief. 28 U.S.C. § 2244(d)(1)(A). A judgment becomes final within the meaning of § 2244(d)(1)(A) when all direct appeals in the state courts are concluded followed by either the completion or denial of certiorari proceedings in the U.S. Supreme Court, or if certiorari is not sought, at the expiration of the 90 days allowed for filing for certiorari. *See Anderson v. Litscher*, 281 F.3d 672, 675 (7th Cir. 2002).

It appears Stokes's petition is timely. According to the information provided in his federal habeas petition, Stokes's conviction became final on April 13, 2009, which was 90 days after the Wisconsin Supreme Court denied Stokes's petition for review.

The court continues its Rule 4 review by examining Stokes's petition to determine whether he has exhausted his state remedies. The district court may not address the merits of the constitutional claims raised in a federal habeas petition "unless the state courts have had a full and fair opportunity to review them." *Farrell v. Lane*, 939 F.2d 409, 410 (7th Cir. 1991). Accordingly, a state prisoner is required to exhaust the remedies available in state court before a district court will consider the merits of a federal habeas petition. 28 U.S.C. § 2254(b)(1)(A). If a federal

-2-

Case 2:10-cv-00033-JPS   Filed 03/03/10   Page 2 of 11   Document 4

habeas petition has even a single unexhausted claim, the district court must dismiss the entire petition and leave the petitioner with the choice of either returning to state court to exhaust the claim or amending or resubmitting the petition to present only exhausted claims. *See Rose v. Lundy*, 455 U.S. 509, 510 (1982); *Rhines v. Weber*, 544 U.S. 269, 278 (2005). A prisoner exhausts his constitutional claim when he presents it to the highest state court for a ruling on the merits. *Simmons v. Gramley*, 915 F.2d 1128, 1132 (7th Cir. 1990). Once the state's highest court has had a full and fair opportunity to pass upon the merits of the claim, a prisoner is not required to present it again to the state courts. *Humphrey v. Cady*, 405 U.S. 504, 516 n.18 (1972).

It appears that the claim in Stokes's petition is exhausted. Stokes presents the following claim for relief in his petition: that the trial court violated Stokes's Sixth Amendment rights by admitting testimonial statements of an unavailable witness into evidence at Stokes's trial. Stokes's claim was considered and rejected at the trial court level via a postconviction motion. He appealed his conviction and the denial of his postconviction motion to the Wisconsin Court of Appeals, which also rejected his claim. The appellate court stated that even if the Sixth Amendment's Confrontation Clause was violated, such violation was harmless error, under the standard set out in *State v. Hale*,[1] 2005 WI 7, 691 N.W.2d 637, because of the

---

[1] The Wisconsin Supreme Court held in *Hale* that a Confrontation Clause violation is harmless if it is beyond a reasonable doubt that the violation did not contribute to the verdict obtained. 2005 WI 7, ¶ 2, 691 N.W.2d 637.

limited purpose for which the testimony was admitted, and because of the overwhelming evidence in favor of guilt presented by three other witnesses (two of whom were eyewitnesses). The Wisconsin Supreme Court denied Stokes's petition for review of the Court of Appeals' ruling on his claim. Therefore, Stokes's claim appears to have been fully exhausted in state court.

The court next reviews Stokes's petition under Rule 4 to determine whether he has procedurally defaulted on his claim. Even though a constitutional claim in a federal habeas petition has been exhausted, the court is still barred from considering the claim if it has been procedurally defaulted by the petitioner. *See Mahaffey v. Schomig*, 294 F.3d 907, 915 (7th Cir. 2002). A state prisoner procedurally defaults on a constitutional claim in a habeas petition when he fails to raise the claim in the state's highest court in a timely fashion. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). A state prisoner may also procedurally default on a constitutional claim in a habeas petition by failing to raise the claim in a manner prescribed by state procedural laws. *See Thomas v. McCaughtry*, 201 F.3d 995, 1000 (7th Cir. 2000).

Here, the court finds that Stokes has not procedurally defaulted on his claim. His claim was presented and considered on the merits by the Wisconsin Court of Appeals, and Stokes sought timely discretionary review in the Wisconsin Supreme Court.

The court concludes its Rule 4 review by screening for patently frivolous and speculative claim in Stokes's federal habeas petition. *Small v. Endicott*, 998 F.2d

411, 414 (7th Cir. 1993). A review of Stokes's claim reveals that it is frivolous and that he is clearly not entitled to relief.

Stokes was convicted of murdering Kenneth Haley, who was shot and killed on April 4, 2002, outside of his (Haley's) own apartment. (Mke Cty Ct. Case No. 02CF5970, Order dated April 9, 2007, at 1). Stokes challenges the admission at his trial of a statement to police made by a Terrance Jackson. Jackson's original statement to the police was made some months after the shooting occurred. (Id. at 4). In that statement, Jackson, who was facing pending criminal charges on a wholly separate matter, gave the police some of the details of the murder (including the fact that another man, Willie McNeice, was present at the murder) and stated that he (Jackson) had witnessed Stokes murder Haley. (Id. at 4).

At Stokes's first trial, Jackson appeared as a witness for the State; however, he testified that he had lied to the police and that he had not been present when Henley was shot. (Wis. App. Ct. Appeal No. 2007AP928-CR, Decision dated September 25, 2008, ¶ 3). A mistrial was declared when the jurors were unable to return a verdict. (Id.). At Stokes's second trial, Jackson testified that he did not know Stokes, and denied making the statement to the police attributed to him. (Id.). Upon further questioning, Jackson invoked his Fifth Amendment right, and the trial court declared a mistrial, concluding that Jackson's refusal to testify unfairly denied Stokes the right to cross-examine Jackson. (Id.).

At Stokes's third trial, Jackson refused to testify, and was thus deemed an unavailable witness. (Mke Cty Ct. Case No. 02CF5970, Order dated April 9, 2007, at 2). The trial court ruled that the State could admit Jackson's statement given to police, as well as a transcript of the portion of Jackson's testimony from the second trial up to the point that Jackson invoked the Fifth Amendment. Because the statement given to police was "testimonial"[2] in nature, and because Stokes did not have an opportunity to cross-examine Jackson as to that statement, Stokes asserts that admission of Jackson's original statement to the police constitutes a violation of the Confrontation Clause, per the standard set forth in *Crawford v. Washington*, 541 U.S. 36, 51-52 (2004).

Both the trial court and the appellate court found that, even if admission of Jackson's original statement to the police violated Stokes's Sixth Amendment rights, the violation was harmless. Both courts explained that Jackson's statement was admitted for a very limited purpose, and that purpose was not to establish that Jackson had witnessed Stokes murder Henley. (Id. at 4); (Wis. App. Ct. Appeal No. 2007AP928-CR, Decision dated September 25, 2008, ¶ 5). Indeed, the State introduced evidence directly contradicting Jackson's statement to the police, and in closing arguments the prosecutor explained that Jackson was lying in his statement to the police, and that Jackson had not been present at the murder. (Wis. App. Ct. Appeal No. 2007AP928-CR, Decision dated September 25, 2008, ¶ 5). The

---

[2] Meaning the statement was one that the declarant could reasonably expect to be used at trial. *See Crawford v. Washington*, 541 U.S. 36, 51-52 (2004).

prosecution contended that, though Jackson was lying about being present at the murder, Jackson clearly had some accurate information about the murder (as shown by the fact that such information was corroborated by actual eyewitnesses to the murder), and that such information must have come from one who actually was present at the murder. (Id.). The prosecution maintained that Jackson's information must have come from Stokes, though defense counsel argued that Stokes and Jackson had never spoken, and Jackson must have gotten his information from McNeice. (Id.). The appellate court pointed out that, at the end of the day, there was no evidence as to where Jackson's information came from. (Id.). Ultimately, as Stokes agreed, the cased depended on whether the jury believed the in-court testimony of the State's witnesses, and nothing about the Jackson statement made that testimony more or less believable (unless Jackson got his information from someone either than McNeice, Stokes, or one of the State's witnesses, but such an assertion was neither made nor argued). (Id.).

In explaining why the Confrontation Clause violation (if such a violation occurred) was harmless, the courts heavily emphasized the overwhelming evidence of Stokes's guilt presented at the third trial. (Id. ¶ 8); (Mke Cty Ct. Case No. 02CF5970, Order dated April 9, 2007, at 5-6). The State presented the eyewitness testimony of McNeice and another man, Kinley Patterson, both of whom testified that they had gone with Stokes to Henley's home to purchase marijuana, and that when Henley was walking up the stairs to his (Henley's) apartment, Stokes shot him. (Mke

-7-

Cty Ct. Case No. 02CF5970, Order dated April 9, 2007, at 5). Another man, Michael Bridges, testified that he was with McNeice, Kinley, and Stokes when they went to Henley's home, and though he did not see the shooting, he corroborated the remainder of McNeice and Kinley's testimony. (Id. at 6). The state courts held that given the weight of the in-court testimony, and the very limited purpose for which Jackson's statement was admitted, that Jackson's statement, even if it should not have been admitted, was a harmless error that did not influence the outcome of the case.

Neither of the state courts decided the issue of whether there had in fact been a Sixth Amendment violation; both courts based their rulings entirely on the lack of harm that resulted from the admission of the statement. While this court agrees with the state courts that were there a violation of the Confrontation Clause, such violation would have clearly been harmless (given the foregoing reasons), this court, however, concludes that there was no such violation.

According to the seminal case on the subject, *Crawford v. Washington*, the Confrontation Clause bars the admission of most testimonial out-of-court statements when the defendant does not have an opportunity to cross-examine the declarant. 541 U.S. 36. However, not all such statements are so barred. Among the testimonial out-of-court statements not barred by the confrontation clause (regardless of the defendant's inability to cross-examine the declarant) are non-hearsay statements. *U.S. v. Mitchell*, 502 F.3d 931, 966 ("The Confrontation Clause

does not apply to non-hearsay, that is, it 'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.'") (quoting *Crawford*, 541 U.S. at 59 n. 9).

Jackson's statement to the police was a non-hearsay statement because it was not admitted at trial to establish the truth of the matter asserted. Indeed, the matter asserted – that Jackson witnessed Stokes kill Henley – was acknowledged by all to be patently untrue. Further, the statement was not admitted to try to establish the other details surrounding the crime, such as the time, date or place. Rather, it was admitted in order to show that Jackson, despite not being at the scene of the crime, knew many of the details of the crime, and the State argued that such knowledge must have come from Stokes. Clearly, such knowledge did not have to come from Stokes, thus the evidence was not very relevant nor useful; however, these shortcomings do not a Confrontation Clause violation make. Because Jackson's statement was admitted as evidence to show knowledge, not to establish the truth of the matter asserted, it was non-hearsay and thus did not implicate the Confrontation Clause.

Based upon the foregoing analysis, this court is obliged to conclude that Stokes's claim is frivolous and he is clearly not entitled to relief. Again, Stokes claims that Jackson's statement was admitted into evidence in violation of the Sixth Amendment. Because Jackson's statement was a non-hearsay statement, its admission did not violate the Sixth Amendment's Confrontation Clause. Even if the

court were mistaken in this holding, the outcome would be no different because, even if there was a Confrontation Clause violation, no harm resulted from such violation, because the statement admitted did not bolster the State's evidence. For these reasons, the court must dismiss Stokes's petition for a writ of habeas corpus.

Under the recently amended Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, a district court is to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Id. As the court is now entering a final order adverse to Stokes, the applicant, the court will additionally rule on the issue of a certificate of appealability.

Before a 2254 petitioner may take an appeal to the Seventh Circuit, the district court must consider whether to grant the petitioner a certificate of appealability ("COA") pursuant to 28 U.S.C. § 2253(c). Fed. R. App. P. 22(b). The COA may issue only if the applicant makes a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). If the court issues a COA, it must indicate on which specific issue or issues the petitioner has satisfied the "substantial showing" requirement. *See* 28 U.S.C. § 2253(c)(3).

In the instant case, the court has two independent rationales for dismissing Stokes's petition. The court finds that reasonable jurists could not reasonably debate whether the petition should have been resolved in a different manner, for Stokes's Sixth Amendment rights were not violated and, even if they had been, such violation would have been harmless. Where there are two independent and sufficient reasons for the dismissal of a claim, the granting of a COA is clearly inappropriate.

Accordingly,

**IT IS ORDERED** that petitioner's Petition for Writ of Habeas Corpus (Docket #1) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that petitioner be and the same is hereby **DENIED** a Certificate of Appealability; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED**.

The Clerk of the Court is directed to enter Judgment accordingly.

Dated at Milwaukee, Wisconsin, this 3rd day of March, 2010.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge